**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
MARIE M. MCCRARY (State Bar No. 262670)
marie@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 336-6545
Facsimile: (415) 449-6469

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT KOLLER, on behalf of himself, the general public, and those similarly situated, | Case No. _____ |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC; and HARLEY-DAVIDSON MOTOR COMPANY, INC., | |
| Defendants. | |

CLASS ACTION COMPLAINT

Plaintiff Scott Koller ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, brings this class action for damages and equitable relief against Harley-Davidson Motor Company Group, LLC and Harley-Davidson Motor Company, Inc. (collectively, "Defendant" or "Harley-Davidson"). Plaintiff alleges the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

## INTRODUCTION

1.      This is a class action against Harley-Davidson relating to its the sale of motorcycles with warranties that fail to comply with federal and state law. First, the motorcycle warranty terms condition the continued validity of the warranty on the use of only an authorized repair service and/or authorized replacement parts (a/k/a "tying arrangement" or "unlawful repair restriction"). Tying arrangements that condition a consumer product's warranty on the use of a specific repair service or the use of authorized parts, in this manner, violate state and federal law, including the  Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312 (the "MMWA"), and its implementing regulations, 16 CFR §§ 700.1, *et seq*.

2.      Here, Defendant's authorized dealers provide service at a price premium compared to the cost of independent service. And Defendant's authorized parts are sold at a price premium compared to the cost of non-Harley-Davidson (generic) parts and supplies. Defendant's noncompliance is self-serving in that these misrepresentations help Defendant develop and maintain a monopoly on repairing the goods they sell, and on selling after-market parts because many purchasers will not attempt even simple, inexpensive repairs—or use inexpensive third-party repair services—if they believe doing so will void the warranties they purchased with their motorcycle.

3.      Thus, consumers, including Plaintiff and those similarly situated, were (and are) unlawfully forced to pay for the more expensive repairs, maintenance, and parts for their motorcycle from authorized Harley-Davidson dealers in order to continue the warranty coverage that was included with their original motorcycle purchases. Had Plaintiff and Class members

CLASS ACTION COMPLAINT

been aware that the warranty included an unlawful repair restriction, they would not have: (i) purchased the motorcycles, or would have paid significantly less for them and (ii) paid a price premium for Harley-Davidson authorized repairs and parts for the motorcycles.

4.      Further, Defendant exacerbates its violations by failing to comply with the MMWA's requirement to provide consumers with access to any written warranty prior to the point of sale (hereinafter, the "Pre-Sale Availability Rule"). To comply with the Pre-Sale Availability Rule, warrantors must provide sellers with materials to make the terms of a product's written warranty "readily available for examination by the prospective buyer" by either (1) displaying the warranty "in close proximity" to the product or (2) placing signs around the store in prominent locations, alerting the consumer that he or she may inspect product warranties upon request. This obligation extends to any product with a written warranty that costs more than $15. 16 C.F.R. § 702.3. Defendant unlawfully fails to disclose the written warranty terms to Plaintiff and Class Members prior to the point of sale and fails to disclose material terms of the warranty including the tying arrangement.

5.      Finally, Defendant unlawfully fails to comply with the MMWA's Disclosure Rule which states that, for products costing more than $15, a "warranty needs to disclose, clearly and conspicuously in a single document in simple and readily understood language. . . (2) A clear description and identification of products, or parts, or characteristics, or components or properties covered by and where necessary for clarification, excluded from the warranty." 16 C.F.R. § 701.3(a)(2). Harley-Davidson violates the Disclosure Rule because the written warranty does not include the full terms of the warranty and instead it instructs consumers to consult with a Harley-Davidson dealer for full details.

6.      Accordingly, Plaintiff asserts claims on behalf of himself, and a class of similarly-situated consumers, for violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791, *et seq.*; violations of the MMWA, 15 U.S.C. § 2301, *et seq.*; fraudulent concealment; violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code § 1750, *et seq.*; violation of the Unfair Competition Law ("UCL"), Bus. & Prof. Code §17200 *et seq.*; and

unjust enrichment.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. Section 1332(d)(2)(A) because: (i) there are 100 or more Class Members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) Plaintiff and Defendants are citizens of different states.

8.      This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

*9.*      Pursuant to 28 U.S.C. Section 1331, this Court has federal question jurisdiction over Plaintiff's MMWA claims as Plaintiff's damages, including his fees and costs to date, exceed $50,000. 15 U.S.C. § 2310.

10.      The injuries, damages and/or harm upon which this action is based occurred or arose out of activities engaged in by Harley-Davidson within, affecting, and emanating from the State of California. Harley-Davidson regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products provided to persons in the State of California. Harley-Davidson has engaged, and continues to engage, in substantial and continuous business practices in the State of California.

11.      Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

12.      In accordance with California Civil Code Section 1780(d), Plaintiff concurrently files herewith a declaration establishing that he purchased a Harley-Davidson motorcycle in Livermore, California and was subsequently forced by Defendants to pay for repair services through authorized dealers and purchase only Harley-Davidson parts and accessories to retain warranty coverage. (*See* Exhibit A.)

13.      Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

## PARTIES

CLASS ACTION COMPLAINT

14.     Plaintiff Scott Koller ("Plaintiff") is domiciled in, and a citizen of, California, and is, and was, at all relevant times, a resident of Brentwood, California. Plaintiff makes his permanent home in California and intends to remain in California.

15.     Defendant Harley-Davidson Motor Company Group, LLC is a Wisconsin limited liability company domiciled in and, with its principal place of business located in, Milwaukee, Wisconsin. At all times relevant hereto, Defendant Harley-Davidson Motor Company Group, LLC has done business throughout the United States, with extensive business operations in the state of California. Harley-Davidson Motor Company Group, LLC has manufactured, advertised, offered for sale, sold, and distributed Harley-Davidson motorcycles, parts, accessories, and other products to consumers throughout the United States.

16.     Harley-Davidson Motor Company, Inc. is a Wisconsin corporation domiciled in and, with its principal place of business located in, Milwaukee, Wisconsin. At all times relevant hereto, Harley-Davidson Motor Company, Inc. has done business throughout the United States, with extensive business operations in the state of California. Harley-Davidson Motor Company, Inc. has manufactured, advertised, offered for sale, sold, and distributed Harley-Davidson motorcycles, parts, accessories, and other products to consumers throughout the United States.

**SUBSTANTIVE ALLEGATIONS**

17.     Harley-Davidson Motor Company, Inc. was founded in 1903. It bills itself as "the most desirable motorcycle brand in the world." Its logo and products are instantly recognizable to riders and non-riders alike. As a result, Harley-Davidson can charge a premium for its motorcycles and related products and services.

18.     Consumers who purchase Harley-Davidson's motorcycles generally consider it a significant investment and value maintenance more than those who select other brands of motorcycles.[1] In other words, when consumers purchase a Harley-Davidson motorcycle, they

_____

[1] https://houstonharleytalk.com/harley-davidson-maintenance/. ("For many motorcycle owners, maintenance is a necessary afterthought, something that's needed to keep their bikes up and running. But for Harley owners, that's simply not the case.").

CLASS ACTION COMPLAINT

know that they will also have to invest in future repairs and maintenance costs to keep the motorcycle on the road.

19.     Harley-Davidson, however, does not permit customers to choose how they repair and maintain their motorcycles. Instead, to insure future revenue for itself, Harley-Davidson unfairly and unlawfully ties the continuity of the motorcycles' warranty coverage with obtaining repairs only from authorized dealers and on using only Harley-Davidson authorized parts and accessories. In other words, if a consumer repairs his or her own motorcycle or uses an independent dealer and/or installs unauthorized parts or accessories on his or her motorcycle, Harley-Davidson threatens that it will void the warranty. Sales of genuine parts and accessories are Harley-Davidson's second-largest source of revenue and consistently comprise approximately 20% of those revenues.

20.     Additionally, Harley-Davidson unlawfully fails to provide consumers with the written warranty or this tying arrangement in the warranty prior to purchase; instead Harley-Davidson instructs consumers to consult its authorized dealers for the full terms of its warranty coverage.

**A.     Harley-Davidson's Warranty Coverage.**

21.     Harley-Davidson offers purchasers of Harley-Davidson motorcycles a limited written warranty (the "Warranty"), which is described in its owner manual and constitutes a "written warranty," as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(B).

22.     The length of Harley-Davidson's Warranty coverage is twenty-four months, "starting from the earlier of (a) the date of the initial retail purchase and delivery of the motorcycle from an authorized Harley-Davidson dealer; or (b) the third anniversary of the last day of the model year of the motorcycle."

**B.      Defendant's Unlawful Repair Restriction.**

23.      Harley-Davidson's Warranty also unlawfully provides that "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty." All of the Harley-Davidson motorcycles sold during, the proposed class period, include the same unlawful tying arrangement in their warranties.

24.      Harley-Davidson further conditions its Warranty coverage on the use of "genuine" Harley-Davidson parts and accessories.

25.      For example, Harley-Davidson's 2021 warranty states: "Genuine Harley-Davidson parts are engineered and tested specifically for use on your motorcycle. Insist that your authorized Harley-Davidson dealer uses only genuine Harley-Davidson replacement parts and accessories to keep your Harley-Davidson motorcycle and its limited warranty intact."[2]

26.      It further states, in pertinent part, that: "This limited warranty will not apply to any motorcycle … 1. Which has not been operated or maintained as specified in the owner's manual. … 4. Which has off-road or competition parts installed to enhance performance, a trailer hitch, or has other unapproved modifications (even if these modifications include genuine Harley-Davidson parts and accessories that are not approved for use on your motorcycle). These modifications may void all or parts of your new motorcycle limited warranty. See an authorized Harley-Davidson dealer for details."

27.      Harley-Davidson's 2021 warranty additionally provides that the "[u]se of aftermarket performance parts may void all or parts of your limited warranty. See an authorized Harley-Davidson dealer for details" and that "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty."

28.      Harley-Davidson does not offer replacement parts under the warranty free of charge. Instead, it charges a significant price premium for the purchase of parts authorized under the warranty.

[2] Plaintiff is informed and believes that these warranty terms—i.e., the prohibitions against non-Harley-Davidson authorized service or parts-—were consistent throughout the proposed class period, including for the warranty applicable to Plaintiff's Harley-Davidson motorcycle.

CLASS ACTION COMPLAINT

29.     Harley-Davidson did not seek a waiver from the Federal Trade Commission ("FTC") that would permit it to condition warranty coverage on the use of genuine Harley-Davidson parts and accessories. Indeed, the FTC recently released a report titled, "Nixing the Fix: an FTC Report to Congress on Repair Restrictions," condemning manufacturers that restrict consumers from choosing how they repair products.[3] As the FTC has explained, "[t]hese types of restrictions can significantly raise costs for consumers, stifle innovation, close off business opportunity for independent repair shops, . . . delay timely repairs, and undermine resiliency."[4]

30.     Harley-Davidson does exactly what the FTC has found unlawful, including conditioning its product warranty on the use of specified repair service providers and the use of authorized parts. Moreover, Harley-Davidson exacerbates these violations by failing to disclose the full terms of its warranties to consumers until after the point of sale.

31.     Had Plaintiff, and those similarly situated, been aware of the unfair and unlawful tying restrictions, they would have not purchased, or paid less, for their Harley-Davidson motorcycles; used independent repair services; done repairs themselves; used non-authorized parts and accessories; or, at a minimum, if they used authorized dealers for services or purchased authorized parts and accessories, they would have paid less for them.

32.     By conditioning its warranty in this manner, Harley-Davidson has violated the tying prohibition in the Magnuson-Moss Warranty Act that prohibits companies from conditioning warranties on the consumer's use of any article or service (other than an article or service provided without charge under the terms of the warranty) identified by brand, trade, or corporate name.

**C.     Defendant's Violations of the Magnuson-Moss Warranty Act.**

---

[3] https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf

[4] https://www.ftc.gov/system/files/documents/public_statements/1592358/p194400khanremarksrighttorepair.pdf

33.     The MMWA regulates consumer warranties and the procedures used to resolve warranty disputes.

34.     The broad purposes of the MMWA are: (1) to improve the adequacy of warranty information available to consumers, and thereby facilitate consumer choice; (2) to prevent deception; and (3) to improve competition in the marketing of consumer products.

35.     The MMWA prohibits a warrantor from conditioning a warranty for a consumer product that costs more than $5 on the consumer's use of an article or a service (other than an article or a service provided without charge) which is identified by brand, trade, or corporate name, unless the warrantor applies for and receives a waiver from the Commission (the "Tying Prohibition"). 15 U.S.C. § 2302(c); *see also* 16 C.F.R. § 700.10.

36.     A "warrantor" is defined as "a supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty." 15 U.S.C. § 2301(5); *see also* 16 C.F.R. § 701.1(h).

37.     An FTC Rule interpreting this provision specifically addresses warranty language (nearly identical to Harley-Davidson's warranty):

> No warrantor may condition the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance (other than an article of service provided without charge under the warranty or unless the warrantor has obtained a waiver pursuant to section 102(c) of the Act, 15 U.S.C. 2302(c)). For example, provisions such as, "This warranty is void if service is performed by anyone other than an authorized 'ABC' dealer and all replacement parts must be genuine 'ABC' parts," and the like, are prohibited where the service or parts are not covered by the warranty. These provisions violate the Act in two ways. First, they violate the section 102(c), 15 U.S.C. 2302(c), ban against tying arrangements. Second, such provisions are deceptive under section 110 of the Act, 15 U.S.C. 2310, because a warrantor cannot, as a matter of law, avoid liability under a written warranty where a defect is unrelated to the use by a consumer of "unauthorized" articles or service.

16 CFR § 700.10(c).

38.     In addition, the MMWA's Pre-Sale Availability Rule, 16 C.F.R. § 702.3, states that, for products costing more than $15, the seller "shall make a text of the warranty readily available for examination by the prospective buyer by: (1) Displaying it in close proximity to the warranted

product … or (2) … placing signs reasonably calculated to elicit the prospective buyer's attention in prominent locations in the store or department advising such prospective buyers of the availability of warranties upon request." Warrantors are required to provide sellers with all materials necessary to comply with the Pre-Sale Availability Rule. 16 C.F.R. § 702.3(b).

39.     Harley-Davidson violates the Pre-Sale Availability Rule because it does not provide sellers with all materials necessary to comply with the Pre-Sale Availability Rule. In particular, Harley-Davidson dealers do not make the warranty applicable to the motorcycles readily available for examination by the prospective buyer.

40.     In addition, the MMWA's Rule Governing Disclosure of Written Consumer Product Warranty Terms and Conditions, 16 C.F.R. § 701 ("the Disclosure Rule"), states that, for products costing more than $15, a "warranty needs to disclose, clearly and conspicuously in a single document in simple and readily understood language. . . (2) A clear description and identification of products, or parts, or characteristics, or components or properties covered by and where necessary for clarification, excluded from the warranty." 16 C.F.R. § 701.3(a)(2). The Disclosure Rule was enacted pursuant to the MMWA. *See* 15 U.S.C. § 2302.

41.     Harley-Davidson violates the Disclosure Rule because it conceals the full terms of the warranty and instead instructs consumers to consult with a Harley-Davidson dealer for full details. In particular, the warranty states that "[s]ome countries, states or other locations may require all regular maintenance and service work to be done by an authorized Harley-Davidson dealer for your warranty to remain in effect. Check with your local Harley-Davidson dealer for local requirements."

**D.     Section 5 Of The Federal Trade Commission Act**

42.     Pursuant to § 2310(b) of the MMWA, a violation of the MMWA or a rule thereunder, constitutes a violation of § 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) (the "FTC Act").

43.     The FTC has found that a "manufacturer's use of a repair restriction could be challenged as an unfair practice under Section 5 of the FTC Act if the repair restriction causes

substantial injury (e.g., monetary harm or unwarranted health and safety risks) that is not outweighed by countervailing benefits to consumers or competition that the practice produces, and the injury could not have been reasonably avoided by consumers."[5]

44.     Section 5 of the Federal Trade Commission Act prohibits unfair or deceptive actions or practices, as well as unfair methods of competition, in or affecting commerce. Section 5 also encompasses violations of the Sherman Act, which prohibits certain exclusionary and other anticompetitive conduct. *See, e.g., Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992); *United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001).

45.     The FTC has noted that "[r]estricting consumers and businesses from choosing how they repair products can substantially increase the total cost of repairs, generate harmful electronic waste, and unnecessarily increase wait times for repairs. In contrast, providing more choice in repairs can lead to lower costs, reduce e-waste by extending the useful lifespan of products, enable more timely repairs, and provide economic opportunities for entrepreneurs and local businesses."[6]

46.     The FTC has issued several warning letters to companies that appeared to be engaged in warranty tying in violation of the Magnuson-Moss Warranty Act and has brought at least one enforcement action.

47.     The FTC has concluded that "it is clear that repair restrictions … steered consumers into manufacturers' repair networks or to replace products before the end of their useful lives."[7]

48.     While manufacturers explain that these repair restrictions often arise from their desire to protect intellectual property rights and prevent injuries and other negative consequences

---

[5] https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf
[6] https://www.ftc.gov/system/files/documents/public_statements/1592330/p194400repairrestrictionspolicystatement.pdf, pg 1.

[7] https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf, pg. 6.

resulting from improper repairs, the FTC has found that such justifications "should be rejected if found to be a mere pretext for anticompetitive conduct."[8]

49.     Here there is no justification for Defendant's repair restrictions since the repair and maintenance of Harley-Davidson motorcycles is well known, and the repair restriction is not relevant as any consideration of personal injury or improper repairs.

**D.     Plaintiff and the Class's Experiences**

50.     In March of 2017, Plaintiff purchased a new 2017 Harley-Davidson Road-Glide Special motorcycle from a Harley-Davidson dealer in Livermore, California. At the time of his purchase, he was told by a Harley-Davidson representative that his motorcycle purchase included a two-year warranty. The Harley-Davidson representative also told him that if he wanted an engine upgrade for his motorcycle, he would have to purchase the air filter, exhaust and electronic tuner from the dealership and have the parts installed by Harley Davidson to receive warranty coverage for the upgrade and to preserve the warranty coverage on the motorcycle.

51.     In making his Harley-Davidson purchase, Plaintiff reasonably believed its warranty complied with state and federal law and believed that the motorcycle could be maintained or repaired using third-party replacement parts and independent repair shops. The terms of the warranty were not displayed in the Harley-Davidson dealer's store nor did he see a sign stating that he could review a copy of the warranty prior to his purchase. Plaintiff did not receive a copy of the written warranty that covered his motorcycle before he purchased it. He later learned that the warranty associated with the motorcycle he purchased did not comply with state and federal law because it includes unlawful repair restrictions.

52.     During the term of his warranty, Plaintiff paid for several Harley-Davidson authorized repairs and parts, including without limitation, each of the following:

> a.   in or around March of 2017, an engine upgrade and installation, including installation of new air filter, exhaust and electronic tuner, from the Harley-Davidson dealer;

[8] *Id.* at 10.

b.   on or around April 13, 2017, Harley-Davidson O-Ring, Gasket Service Kit, Oil Filter and TU Kit for $54.41;

c.   on or around May 10, 2017, Harley Davidson oil for $74.85;

d.   on or around October 5, 2017, Harley-Davidson fluids (oil and transmission), Oil Filter, and O-Ring for $108.92;

e.   on or around June 18, 2018, Harley-Davidson Brake Pad, PIN kit, and Oil Change Kit for $112.24; and

f.   on or around December 20, 2018, Harley Davidson Oil Change Kit for $64.70.

53.     Plaintiff would not have purchased the motorcycle, or would have paid significantly less for it, had he known that the motorcycle did not comply with state and federal law. Additionally, Plaintiff would not have paid for, or, at a minimum, would have paid less for Harley-Davidson authorized service and Harley-Davidson authorized parts and accessories, set forth above, had he not been forced to by Harley's Davidson's unlawful tying arrangement to purchase only authorized parts and services to maintain his warranty coverage.

54.     Finally, the unlawful repair and part restrictions attached to his warranty were only made reasonably apparent to him after his initial purchase.

## CLASS ALLEGATIONS

55.     Plaintiff brings this class action lawsuit on behalf of himself and a proposed class of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiff seeks to represent the following group of similarly situated persons, defined as follows:

> Class: All natural persons who purchased a Harley-Davidson motorcycle. Excluded from the Class are persons who made such purchases for purpose of resale.
>
> California Subclass: All Class Members who reside in California.

56.     Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

57.     This action has been brought and may properly be maintained as a class action against Harley-Davidson because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

58.     Numerosity: Plaintiff does not know the exact size of the Class, but he estimates that it is composed of more than 5,000 persons. The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

59.     Common Questions Predominate: This action involves common questions of law and fact to the potential classes because each Class Member's claim derives from the same deceptive, unlawful and/or unfair statements and omissions. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. The questions of law and fact common to the Class include, but are not limited to, the following:

   a.   Whether Harley-Davidson included an unlawful tying agreement in its warranty;

   b.   Whether Harley-Davidson concealed from the Class the full terms of its warranty from consumers prior to purchase;

   c.   Whether Harley-Davidson's representations and omissions are material to reasonable consumers;

   d.   Whether Harley-Davidson had a duty to disclose the full terms of its warranty provisions;

   e.   Whether Harley-Davidson engaged in unfair, unlawful, or deceptive business practices in marketing or selling the motorcycles;

   f.   Whether Harley-Davidson violated the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.*;

   g.   Whether Harley-Davidson's conduct violated section 5 of the FTC Act;

   h.   Whether Harley-Davidson's conduct violated the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791, *et seq.*;

i.  The amount of profits and revenues earned by Harley-Davidson as a result of its misconduct;

j.  Whether Class Members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

k.  Whether Class Members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

60.  Typicality: Plaintiff's claims are typical of the claims of other members of the Class because, among other things, all such claims arise out of the same wrongful course of conduct in which the Harley-Davidson engaged in violation of law as described herein. Plaintiff and Class Members purchased one or more motorcycles that included a tying agreement in its warranty coverage. In addition, Harley-Davidson's conduct gave rise to the claims of Plaintiff and Class Members. They additionally paid for Harley-Davidson authorized services or parts that they would not have paid, or, at a minimum, would have paid less for had Defendant not conditioned or tied warranty coverage to the use of Harley-Davidson authorized services and/or parts. Plaintiff's claims, like the claims of the Class, arise out of the same common course of conduct by Harley-Davidson and are based on the same legal and remedial theories.

61.  Adequacy of Representation: Plaintiff will fairly and adequately protect the interests of all Class Members because it is in his best interests to prosecute the claims alleged herein to obtain full compensation due to him for the unfair and illegal conduct of which he complains. Plaintiff also has no interests that are in conflict with, or antagonistic to, the interests of Class Members. Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and those of the classes. By prevailing on his own claims, Plaintiff will establish Harley-Davidson's liability to all Class Members. Plaintiff and his counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class Members and are

-15-

determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class Members.

62.     Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the classes will tend to establish inconsistent standards of conduct for Harley-Davidson and result in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

63.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## ANY APPLICABLE STATUTE OF LIMITATIONS ARE TOLLED
## BY THE DISCOVERY RULE

64.     The tolling doctrine is designed for cases of concealment such as this. Plaintiffs and the Class members did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants were concealing and misrepresenting the unlawful terms of their warranty from Plaintiff and Class member.

65.     Plaintiffs and Class members had no realistic ability to discover the fact that the tying arrangement was illegal because they are lay-persons and Defendants intentionally hid the full terms of the warranty from Plaintiffs, Class Members and the general public.

66.     Any statutes of limitation otherwise-applicable to any claims asserted herein have thus been tolled by the discovery rule.

## FRAUDULENT CONCEALMENT

67.     All applicable statutes of limitation have also been tolled by Defendants' knowing, active and ongoing fraudulent concealment of the facts alleged herein.

68.     Defendants have known of the illegality of their warranty terms since they included them in their warranty agreement, and then intentionally hid the full terms of the warranty from Plaintiffs, Class Members and the general public. Plaintiffs, Class members, and consumers who shop for and buy Defendants' motorcycles were not aware of the true, unlawful nature of Defendants' warranty until recently.

69.     Even to present day, Defendants have denied any wrongdoing and continue to conceal material facts, evidence and information. For example, to date, they have not changed the warranty terms or, if they have, they have yet to provide Plaintiff, Class members or the general public with notice. Moreover, Defendants continue to hide the full terms of their warranty agreement from Plaintiff, Class members or the general public.

70.     Any otherwise-applicable statutes of limitation have therefore been tolled by Defendants' exclusive knowledge and concealment of the facts alleged herein.

## **ADDITIONAL NOTICE WOULD BE FUTILE**

71.     For those causes of action requiring notice, Plaintiff alleges that any additional notice would be futile.

     a.     First, on behalf of himself and those similarly situated, Plaintiff previously brought to Defendant's attention issues with its warranty coverage. Instead of making the requested modifications to its practices and policies and/or compensating those affected, Defendant denied responsibility and then refused to engage with Plaintiff.

     b.     Second, unlike situations where presentment could result in additional (warranty covered) repairs, the gravamen of this Complaint is not that Defendant should make additional repairs, it is that Defendant must (i) stop tying warranty coverage to the use of Harley-Davidson authorized service and parts/accessories and

(ii) compensate Plaintiff, and those similarly situated, for damages associated with its unlawful activities.

c.   Third, the FTC has fined Defendant for many of the violations alleged herein. Yet, Defendant has not taken any steps to compensate those affected.[9]

## FIRST CAUSE OF ACTION
### Violations of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791, *et seq.*
### On Behalf of Plaintiff and the California Subclass

72.     Plaintiff realleges and incorporates the above allegations by reference as if set forth fully herein.

73.     By its conduct alleged herein, Harley-Davidson violated the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791, *et seq.* ("Song-Beverly Act" or "SBCWA").

74.     The motorcycles purchased by California Subclass members are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

75.     Harley-Davidson is a "retailer" within the meaning of Cal. Civ. Code § 1791(l).

76.     Cal. Civil Code § 1793.1(a)(1) states that "Every manufacturer, distributor, or retailer making express warranties with respect to consumer goods shall fully set forth those warranties in simple and readily understood language, which shall clearly identify the party making the express warranties, and which shall conform to the federal standards for disclosure of warranty terms and conditions set forth in the federal Magnuson-Moss Warranty-Federal Trade Commission Improvement Act (15 U.S.C. Sec. 2301, *et seq.*), and in the regulations of the Federal Trade Commission adopted pursuant to the provisions of that act."

77.     Harley-Davidson does not conform to the standards for disclosure of warranty terms and conditions set forth in the MMWA because it failed to adequately disclose the terms of its express warranty. Instead, it did not provide complete terms until after the point of sale and

---

[9] In the alternative, Plaintiff hereby notifies Defendant that it has violated, without limitation, the Magnusson-Moss Warranty Act, 15 U.S.C. §§ 2301 et seq., California Civ. Code § 1790 et seq., California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL"), False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq. ("FAL"), the Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, et seq. ("CLRA"), and California's common law of express and implied warranty, negligent misrepresentation and/or omission, by including unlawful provisions in the warranty, as set forth in detail in this Complaint.

instructs consumers to consult with a Harley-Davidson dealer for full details of the warranty. And, as set forth above, Harley-Davidson's warranty unlawfully includes a tying arrangement which provides, *inter alia*, that "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty."

78.     Harley-Davidson's conduct caused the motorcycles to be worth less than what Plaintiff and California Subclass Members paid for them and deprived Plaintiff and California Subclass Members of the benefit of the bargain. Furthermore, Harley-Davidson's conduct caused Plaintiff, and other California Subclass Members, to pay for Harley-Davidson authorized services or parts that they would not have paid, or, at a minimum, would have paid less for, had Defendant not conditioned or tied warranty coverage to the use of Harley-Davidson authorized services and/or parts.

79.     As a direct and proximate result of Harley-Davidson's breach of its duties, Plaintiff and California Subclass Members received goods in a condition that substantially impairs their value. Plaintiff and California Subclass Members have been damaged in that the motorcycles require actual and potential increased maintenance and repair costs. Finally, Harley-Davidson's conduct caused Plaintiff, and other California Subclass Members, to pay for Harley-Davidson authorized services or parts that they would not have paid, or, at a minimum, would have paid less for, had Defendant not conditioned or tied warranty coverage to the use of Harley-Davidson authorized services and/or parts.

80.     Plaintiff and the California Subclass Members have met all of their obligations under the warranty, or otherwise have been excused from performance of such obligations, as a result of Harley-Davidson's conduct.

81.     Under Cal. Civil Code § 1794, Plaintiff and California Subclass Members are entitled to damages and other legal and equitable relief, including the purchase price of the motorcycles or the amount representing overpayment for or reduction in value of their motorcycles, and are also entitled to their attorneys' fees and costs.

**SECOND CAUSE OF ACTION**

**Violations of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*
On Behalf of Plaintiff and the Class**

82.     Plaintiff realleges and incorporates the above allegations by reference as if set forth fully herein.

83.     Plaintiff and Class members are "consumers," Harley-Davidson is a "supplier" and "warrantor," and the motorcycles are "consumer products," as defined by the MMWA.

84.     Each purchase of Defendant's motorcycle included a "written warranty," as defined in MMWA, 15 U.S.C. § 2301(6); 16 C.F.R. § 702.1(c).

85.     In connection with the marketing and sale of the motorcycles, Harley-Davidson has conditioned a warranty on the consumer's using, in connection with the warranted product, with the use of only an authorized repair service and/or authorized replacement parts. This violates the MMWA's anti-tying provision which provides that "No warrantor of a consumer product may condition his written or implied warranty of such product on the consumer's using, in connection with such product, any article or service (other than article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name" unless the warrantor has obtained a waiver from the FTC pursuant to the Act. 15 U.S.C. § 2302(c); *see also* 16 C.F.R. § 700.10.

86.     Specifically, Harley-Davidson states, *inter alia*, that "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty."

87.     Consistent with 16 C.F.R. § 702.3, as a warrantor of consumer products with written warranties, for all products costing more than $15, Defendant must provide sellers with the necessary materials to display product warranties in close proximity to the relevant product, or place signs reasonably calculated to elicit consumers' attention, in prominent locations in the store or department, advising consumers of the availability of warranties upon request. 16 C.F.R. § 702.3(a). Defendant does neither of these things.

88.     Defendant also failed to include, for all its motorcycles, each of which cost consumers well in excess of $15, all warranty terms in a single document that contains a clear

CLASS ACTION COMPLAINT

description and identification of products, parts, characteristics, components, or properties covered by and, where necessary for clarification, excluded from the warranty, as required by the Disclosure Rule, 16 C.F.R. § 701.3(a)(2). To the contrary, by stating, in the written warranty without limitation, "See an authorized Harley-Davidson dealer for details,"  "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures *may* void the limited warranty," and "Check with your local Harley-Davidson dealer for local requirements," Defendant knowingly and intentionally hid (and continues to hide) from Plaintiff, and those similarly situated, and the general public, "a clear description and identification of products, parts, characteristics, components, or properties covered by and, where necessary for clarification, excluded from the warranty"

89.    The acts or practices of Defendant, as described above, violate the anti-tying provision of the MMWA, the Pre-Sale Availability Rule, the Disclosure Rule, and Section 5 of the FTC Act, 15 U.S.C. § 45(a)(1).

90.    As a direct and proximate result of Harley-Davidson's violation of the MMWA, Plaintiff and Class Members received goods in a condition that substantially impairs their value. Plaintiff and Class Members have been damaged in that the motorcycles require actual and potential increased maintenance and repair costs. Finally, Harley-Davidson's conduct caused Plaintiff, and other Class Members, to pay for Harley-Davidson authorized services or parts that they would not have paid, or, at a minimum, would have paid less for, had Defendant not conditioned or tied warranty coverage to the use of Harley-Davidson authorized services and/or parts.

91.    As a direct and proximate result of Harley-Davidson's unlawful conduct as set forth above, Plaintiff and the Class have been damaged, and are entitled to relief as set forth hereunder.

### THIRD CAUSE OF ACTION
**Fraudulent Concealment/Nondisclosure
On Behalf of Plaintiff and the Class**

92.     Plaintiff realleges and incorporates the above allegations by reference as if set forth fully herein.

93.     At all relevant times, Harley-Davidson knowingly and intentionally failed to disclose to Class members that the motorcycles' warranties included an unlawful restriction that ostensibly prevented Plaintiff and members of the Class from repairing their motorcycles with their preferred service personnel, including themselves, and/or using non-Harley-Davidson brand parts. Defendant misrepresented that these unlawful repair restrictions were binding and enforceable even though such restrictions were explicitly unlawful according to FTC regulations and thus unenforceable.

94.     Further, Defendant indicated to Plaintiff and members of the Class that they would be unable repair the motorcycles that they purchased unless they used authorized service providers and parts. Defendants added this provision knowingly in order to encourage Plaintiff and members of the Class to purchase authorized service and replacement parts at inflated prices rather than purchase cheaper or more effective independent service and/or parts.

95.     Defendant exacerbated these misrepresentations because the unlawful repair restrictions were not revealed to Plaintiff and members of the Class until after the point of sale.

96.     The false and misleading omissions were made with knowledge of their falsehood. Harley-Davidson manufactures, markets, and sells consumer products nationwide and knows that the FTC has stated that repair restrictions of the type in the Harley-Davidson's warranty are unlawful. Nonetheless, Harley-Davidson continued to include its unlawful repair restrictions in its motorcycle warranties and continue to fail to reveal such restrictions to consumers until after the point of sale.

97.     The concealed information regarding the warranty is material in that a reasonable consumer would find that information important when deciding whether to buy the motorcycles.

98.     Harley-Davidson was and is under a duty to Plaintiff and the Class Members to disclose these facts because Harley-Davidson is in a superior position to know the truth about the quality and nature of its warranty.

99.     Harley-Davidson fraudulently and intentionally concealed from and/or failed to disclose to Plaintiff and the Class the facts described above with the intent to defraud Plaintiff and Class and for the purpose of inducing Plaintiff and Class Members to act thereon by purchasing the motorcycles. Harley-Davidson knew that Plaintiff and the Class Members would not purchase the motorcycles, or would pay less for them, if Harley-Davidson had disclosed the unlawful warranty terms.

100.     Had Harley-Davidson disclosed the true warranty terms, Plaintiff and Class Members would not have purchased the motorcycles, or would have paid less for them. As a direct and proximate result of Harley-Davidson's breach of its duties, Plaintiff and Class Members received goods in a condition that substantially impairs their value. Plaintiff and Class Members have been damaged in that the motorcycles require actual and potential increased maintenance and repair costs. Further, Harley-Davidson's conduct caused Plaintiff, and other Class Members, to pay for Harley-Davidson authorized services or parts that they would not have paid, or, at a minimum, would have paid less for, had Defendant not conditioned or tied warranty coverage to the use of Harley-Davidson authorized services and/or parts.

101.     As a direct and proximate cause of Harley-Davidson's misconduct, Plaintiff and the Class have suffered actual damages in that they have or will have to continue to pay for unwanted or inflated Harley-Davidson authorized repairs, service visits and parts. Plaintiff and the Class have also suffered unreasonable diminution in value of the motorcycles as a result of Harley-Davidson's misconduct.

102.     Harley-Davidson's misconduct has been and is wanton and/or reckless and/or shows a reckless indifference to the interests of others.

### FOURTH CAUSE OF ACTION
**Violations of the Consumer Legal Remedies Act (the "CLRA"), California Civil Code §1750, *et seq.***
**On Behalf of Plaintiff and the California Subclass**

103.     Plaintiff realleges and incorporates the above allegations by reference as if set forth fully herein.

104.     Harley-Davidson's actions, representations and conduct have violated, and continue to violate, the CLRA because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods to consumers.

105.     Plaintiff and other California Subclass Members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

106.     The motorcycles that Plaintiff and other similarly situated California Subclass Members purchased from Harley-Davidson were "goods" within the meaning of California Civil Code § 1761(a).

107.     Harley-Davidson's acts and practices described herein were intended to result in the sale and use of the Product to and by the consuming public and have violated, and continue to violate, § 1770(a)(5), § 1770(a)(8), § 1770(a)(9), § 1770(a)(14), § 1770(a)(15) of the CLRA. In violation of California Civil Code §1770(a)(5), Harley-Davidson represents that the motorcycles have sponsorship, approval, characteristics, benefits, or quantities that they do not have. In violation of California Civil Code §1770(a)(8), Harley-Davidson has disparaged the goods, services, or business of another by false or misleading representation of fact. In violation of California Civil Code §1770(a)(9), Harley-Davidson has advertised the motorcycles with intent not to sell them as advertised. In violation of California Civil Code §1770(a)(14), Harley-Davidson has represented that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law. In violation of California Civil Code §1770(a)(15), Harley-Davidson represented that a part, replacement, or repair service is needed when it is not. Plaintiff requests that this Court enjoin Harley-Davidson from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Harley-Davidson is not restrained from engaging in these types of practices in the future, Plaintiff and the other members of the Class will continue to suffer harm.

108.     CIVIL CODE § 1782 NOTICE. Plaintiff notices and demands that within thirty (30) days from that date of the filing of this Complaint that Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false and or deceptive practices complained of herein.

109.     Should the violations herein alleged not be corrected, repaired, replace or rectified as required by Civil Code § 1782 within 30 days with respect to all California Subclass Members, Plaintiff will seek to amend this Class Action Complaint to seek, on behalf of each California Subclass Member, actual damages of at least $1000, punitive damages, an award of $5000 for each California Subclass Member who is a disabled person or senior citizen, and restitution of any ill-gotten gains due to Defendant's acts and practices.

110.     Plaintiff also requests that this Court award him costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

### FIFTH CAUSE OF ACTION

**Violations of Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq.*
On Behalf of Plaintiff and the California Subclass**

111.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

112.     Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Harley-Davidson has engaged, and continues to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and deceptive business practices outlined in this complaint.

113.     In particular, Harley-Davidson has engaged, and continues to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the MMWA as described herein; (ii) the SBCWA as described herein; (iii) the CLRA as described herein; and (iv) Section 5 of the FTC Act and the federal regulations promulgated thereunder.

114.     In particular, Harley-Davidson has engaged, and continues to engage, in unfair and deceptive practices by, without limitation, the following: (i) knowingly selling motorcycles with unlawful repair restriction provisions in the warranties; and (ii) failing to disclose the full terms of those warranties to consumers until after the point of sale. Harley-Davidson's acts are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

115.     Harley-Davidson's warranty unlawfully provides that "the use of parts and service procedures other than Harley-Davidson approved parts and service procedures may void the limited warranty."

116.     Plaintiff and those similarly situated relied to their detriment on Harley-Davidson's unlawful, unfair, and deceptive business practices. Had Plaintiff and those similarly situated been adequately informed and not deceived by Harley-Davidson, they would have acted differently by, declining to purchase the motorcycles or paying less for them.

117.     Harley-Davidson's acts and omissions are likely to deceive the general public.

118.     Harley-Davidson engaged in these deceptive and unlawful practices to increase its profits. Accordingly, Harley-Davidson has engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

119.     The aforementioned practices, which Harley-Davidson has used to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Harley-Davidson's competitors as well as injury to the general public.

120.     As a direct and proximate result of such actions, Plaintiff and the other California Subclass Members have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiff and the California Subclass Members lost the amount they paid to obtain motorcycles.

121.     As a direct and proximate result of such actions, Harley-Davidson has enjoyed, and continues to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

122.     Plaintiff seeks, on behalf of himself and those similarly situated, equitable relief, including the restitution for the premium and/or full price that they or others paid to Defendant as a result of Defendant's misconduct. Plaintiff and the California Subclass lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this UCL cause

of action because the California Sherman Law does not provide a direct cause of action, so Plaintiff and the Class must allege those violations as predicate acts under the UCL to obtain relief.

123.    Plaintiff also seeks equitable relief, including restitution, with respect to his UCL "fraudulent" prong claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiff and the California Subclass may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Plaintiff is unable to demonstrate the requisite mens rea (intent, reckless, and/or negligence), because the UCL imposes no such mens rea requirement and liability exists even if Defendant acted in good faith.

124.    Plaintiff seeks, on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

125.    Plaintiff seeks, on behalf of himself and those similarly situated, an injunction to prohibit Harley-Davidson from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Harley-Davidson, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Harley-Davidson will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Harley-Davidson to which they were not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## SIXTH CAUSE OF ACTION

### Unjust Enrichment
### On Behalf of Plaintiff and the Class

126.    Plaintiff incorporates the above allegations by reference as if set forth fully herein.

127.    Plaintiff and members of the Class conferred a benefit upon Harley-Davidson. Namely, Plaintiff and members of the Class paid money to Harley-Davidson for ownership of the motorcycles and for the purchase of authorized dealer repairs and parts. Harley-Davidson retained those benefits.

128.    Harley-Davidson has been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' purchases of the motorcycles and authorized dealer repairs and parts. Retention of those moneys under these circumstances is unjust and inequitable because Harley-Davidson failed to disclose that the motorcycles contained an unlawful repair restriction until after the point of sale and failed to allow Class Members to choose the provider of repairs and parts. These omissions caused injuries to Plaintiff and Class members because they would not have purchased the motorcycles and/or the authorized parts and services if the true facts were known or would have paid substantially less for the motorcycles, parts, and/or services.

129.    Retention of those moneys also is unjust and inequitable because, as alleged above, Harley-Davidson includes an unlawful repair restriction in the warranties on their motorcycles that is not disclosed until after the point of sale.

130.    Plaintiff, and the Class, are therefore entitled to disgorgement and/or restitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, prays for relief as follows:

A.    Certification of the proposed Classes, including appointment of Plaintiff's counsel as class counsel;

B.    An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.    An award of compensatory damages in an amount to be determined at trial, except for those causes of action where compensatory damages are not legally available;

D.    An award of statutory damages in an amount to be determined at trial, except for

1    those causes of action where statutory damages are not legally available;

2           E.      An award of punitive damages in an amount to be determined at trial, except for

3    those causes of action where punitive damages are not legally available;

4           F.      An award of treble damages, except for those causes of action where treble

5    damages are not legally available;

6           G.      An award of restitution in an amount to be determined at trial;

7           H.      An award of non-restitutionary disgorgement of profits in an amount to be

8    determined at trial;

9           I.      An order requiring Defendant to pay both pre- and post-judgment interest on any

10   amounts awarded;

11          J.      For reasonable attorneys' fees and the costs of suit incurred; and

12          K.      For such further relief as this Court may deem just and proper.

13                                   **DEMAND FOR JURY TRIAL**

14          Plaintiff hereby demands a trial by jury.

15   Dated: August 5, 2022                        Respectfully submitted,
                                                  **GUTRIDE SAFIER LLP**
16                                                /s/Seth Safier/s/

17                                                Seth A. Safier, Esq.
                                                  Marie M. McCrary, Esq.
18                                                100 Pine Street, Suite 1250
                                                  San Francisco, CA 94111
19                                                Telephone: (415) 639-9090
                                                  Facsimile: (415) 449-6469
20

21                                                Attorneys for Plaintiff Scott Koller

22

23

24

25

26

27

DocuSign Envelope ID: D1462C3A-7F48-45D0-A996-573BF5191C68

# EXHIBIT A

I, Scott Koller, declare as follows:

1.      I am a plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.      I submit this Declaration pursuant to California Code of Civil Procedure section 1780(d).

3.      As set forth in my complaint, I purchased a Harley-Davidson motorcycle in Livermore, California in March of 2017. I subsequently purchased Harley-Davidson parts/services, including online from my home in Brentwood, California and from Harley-Davidson dealers in the Bay Area.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this 5th day of August 2022 in Brentwood, California

_____

Scott Koller